**Thomas J. O'DONNELL, Appellant,**

v.

**UNITED STATES of America.**

No. 89–1363.

United States Court of Appeals, Third Circuit.

Argued Sept. 8, 1989.

Decided Dec. 15, 1989.

---

**1080**

Edward J. Daly, Jeffrey S. Pearson (Argued), Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Lois W. Davis (Argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents, among other issues, a case of primary impression in this circuit relating to the limitation, if any, of the Federal Privacy Act of 1974 on the Federal Tort Claims Act (FTCA) with respect to a person's right to sue a federal agency for an invasion of privacy. Under the FTCA the government is liable for injuries caused by a government employee "if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred." 28 U.S.C. § 1346(b). Plaintiff Thomas O'Donnell brought suit under the FTCA in the United States District Court for the Eastern District of Pennsylvania against the Veterans Administration Agency (VA) for invasion of privacy and negligent disclosure of psychiatric records.

The Government filed a motion to dismiss and, in the alternative, a motion for summary judgment. The district court, without opinion, granted the Government's motion for summary judgment. O'Donnell appealed. We affirm the district court's judgment as to plaintiff's invasion of privacy claim. We vacate the judgment and remand as to O'Donnell's statutory claim for failure to maintain the confidentiality of his psychiatric records.

## I.

The Commonwealth of Pennsylvania employed O'Donnell in its Office of Employment Security, Department of Labor and Industry, as a disabled veterans employment representative in its Hatboro office. In late 1985, O'Donnell claimed that the two Naval air stations near his office disturbed him because he suffered from a Vietnam-related post-traumatic stress disorder (PTSD). He therefore requested a transfer to the Levittown office of the Department.

His superior, James Hendricks, requested a statement from O'Donnell's Veterans Administration psychiatrist verifying O'Donnell's need for transfer and the medical basis for it. On November 21, 1985, plaintiff executed a "Request For and Consent to Release of Information" form (consent form) requesting the VA "to release the following information from the records of the organization...." Unfortunately, in the space designated for the "INFORMATION REQUESTED," the plaintiff-veteran failed to specify anything; he merely supplied the name and address of his superior, Hendricks. In the space reserved on the form for the "PURPOSE FOR WHICH THE INFORMATION IS TO BE USED," O'Donnell wrote "proof of disability" and "need for reassignment." Dr. Robert Eilers, plaintiff's VA psychiatrist, promptly prepared a letter to Hendricks opining that it "would be in the interests of Mr. O'Donnell and his treatment for him to be assigned to his former office in Bristol, Pennsylvania because of better travel time and conditions." This letter was hand delivered to plaintiff who then delivered it to Hendricks on November 21, 1985.

On December 5, 1985, at O'Donnell's request, Dr. Eilers wrote a supplemental letter to the Pennsylvania Department of Labor explaining that his prior letter recommended O'Donnell's reassignment due to the proximity of the Naval air stations "which has exacerbated symptomology of PTSD, including nightmares, flashbacks, and headaches, because of its reminders of his military experience."

On December 13, 1985, Roberta E. Fisher, a VA employee, sent a copy of Dr. Eilers' treatment summary of the plaintiff to Hendricks. This treatment summary contained the previous information about O'Donnell's post-traumatic stress disorder but also added a statement which is the genesis of this litigation:

> One major problem has been [O'Donnell's] difficulty controlling his anger and impulsive behavior, which has been exacerbated by a turbulent relationship with his girlfriend, conflicts with authority figures and several legal problems.

It is unclear why the VA released this additional information or who requested it. O'Donnell contends that he never authorized the December 13 disclosure of the Eilers' treatment summary to Hendricks. He further claims that this release caused him to suffer severe mental distress, loss of reputation, and led to his dismissal by the Pennsylvania Department of Labor. The Government contends that the November 21 consent form executed by O'Donnell implicitly authorized the December 13 release.

## II.

Before examining the merits of the appeal, we address, *sua sponte*, the district court's failure to render an opinion. Although a district court is not required to file an opinion setting forth its reasons or findings for entering summary judgment, the failure to do so in a non-frivolous case makes it extremely difficult, and perhaps impossible, for an appellate court to discern the district court's basis for its summary judgment ruling and to effectively grant appellate review. The trial court's findings and reasons would have been especially helpful in this case where we are requested to predict what the Pennsylvania Supreme Court would hold under Pennsylvania law and can only speculate as to the district court's reasons for entering summary judgment.

■ In reviewing a district court's summary judgment order, we "are required to apply the same test the district court should have utilized initially." *Good-*

*man v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Here, we must determine if the VA, as the party moving for summary judgment, has met its burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In forming our conclusions, we view the evidence submitted in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *See Adickes, supra*, at 157–60, 90 S.Ct. at 1608–09.

If the moving party has met its burden of proof, the opposing party may not rest on "the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With these standards in mind, we turn to O'Donnell's claims.

### III.

O'Donnell predicated his suit on a theory that the FTCA permits an action against the United States for the common law tort of invasion of privacy. He contends that Pennsylvania law applies and that the December 13, 1985 disclosure of his treatment

summary by Fisher constituted an unwarranted invasion of his right to privacy. O'Donnell also asserts that the aforesaid disclosure of his treatment summary by VA employees is actionable under applicable Pennsylvania law because it resulted from the negligence of the defendant, acting by and through its agents and servants, in failing to secure the confidentiality of plaintiff's psychiatric records. We turn first to O'Donnell's claim that the release of the summary treatment on December 13 amounted to an invasion of his right to privacy.

### A.

 O'Donnell asserts that, under *Aquino v. Bulletin Co.*, 190 Pa.Super. 528, 154 A.2d 422 (1959), Pennsylvania would recognize his invasion of privacy claim for the Government's "unreasonable and serious interference with [his] interest" in not having his treatment summary record disclosed to his employer. The cause of action for invasion of privacy, however, is not one tort but a complex of four. *See Marks v. Bell Telephone Co. of Pa.*, 460 Pa. 73, 331 A.2d 424, 430 (1975). In his complaint, O'Donnell did not allege which specific tort of invasion of his privacy had been committed. At oral argument, however, his counsel stated that O'Donnell premised his privacy claim on the subtort of "intrusion upon seclusion," which is defined under 652B of the Restatement (Second) of Torts.[1]

---

1. In *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974), the Pennsylvania Supreme Court recognized the invasion of privacy tort of intrusion upon seclusion as adopted in the tentative draft of the Restatement (Second) of Torts § 652B. Intrusion upon seclusion is one of four torts of invasion of privacy. *Id. Vogel* only expressly dealt with the invasion of privacy tort of "Publicity Given to Private Life" under § 652D of the Restatement. However, the *Vogel* court stated:

> Dean Prosser has accurately observed that the cause of action for invasion of privacy "is not one tort, but a complex of four." W. Prosser, Handbook of the Law of Torts § 117, at 804 (4th ed. 1971). The Restatement (Second) of Torts has adopted the same four-part analysis. Sections 652A–J (Tent.Draft No. 13, 1967). The four interrelated torts are described in sections 652B through E of the Restatement.

*Id.*, 327 A.2d at 136 n. 9.
The Pennsylvania Supreme Court has not expressly adopted the final draft of the Restatement regarding these sections. *See Harris v. Easton Pub. Co.*, 335 Pa.Super. 141, 483 A.2d 1377, 1383 (1984). We predict, however, that the Pennsylvania Supreme Court will adopt the final Restatement draft pertaining to these sections; we note that a number of Pennsylvania Superior court decisions have cited with approval over a period of years sections 652B–E of the Restatement (Second) of Torts. *See, e.g., Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa.Super. 66, 543 A.2d 1181 (1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *De Angelo v. Fortney*, 357 Pa.Super. 127, 515 A.2d 594 (1986); *Harris v. Easton Pub. Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984); *Nagy v. Bell Tel. Co. of Pa.*, 292 Pa.Super. 24, 436 A.2d 701 (1981).

Section 652B of the Restatement (Second) of Torts, however, requires an *intentional* intrusion. It provides:

One who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

The Restatement (Second) of Torts § 8 defines "intent" to mean:

... that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.

Though intent is defined, the Restatement does not define "intrusion." Webster's defines "intrude" to mean to thrust oneself in without invitation, permission, or welcome.[2] The comments and illustrations to Section 652B disclose that an "intrusion upon seclusion" claim usually involves a defendant who does not believe that he has either the necessary personal permission or legal authority to commit the intrusive act.[3]

■ We conclude that an actor commits an *intentional* intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act. We emphasize that the intrusion, as well as the action, must be intentional. The Restatement supports this conclusion and, as noted, see footnote 1 *supra*, Pennsylvania courts have consistently followed the Restatement in this area of tort law. Therefore, we predict that, if presented with a similar case, the Pennsylvania Supreme Court would adopt our conclusion as to what makes an intrusion upon seclusion *intentional*.

Here, the VA believed it had O'Donnell's permission to release the disputed record. O'Donnell offered no evidence to the contrary. In fact, the VA for a long time had access to O'Donnell's psychiatric records. O'Donnell had authorized the VA on previous occasions to view these records and disclose them. *Before* the alleged privacy violation, O'Donnell had already released to his employer information regarding his psychiatric condition. In addition, as a condition of parole, O'Donnell requested releases of a copy of his hospital summary, a copy of his outpatient treatment notes, and a psychiatric evaluation to the Probation and Parole Department of the Court of Common Pleas of Bucks County, Pennsylvania.

The VA assumed that O'Donnell's request of November 11 authorized the release of the treatment summary of December 13. There is no dispute of material fact concerning the VA's lack of any intention to invade the plaintiff's right to seclusion and privacy. The district court, therefore, committed no error in entering summary judgment for the defendant on O'Donnell's claim for invasion of his right of privacy.

B.

We now examine O'Donnell's second claim for relief. He claims that the VA's disclosure of his treatment summary to his employer constituted negligent conduct under the FTCA because it violated (1) statutory duties imposed on the Government by the Federal Privacy Act, 5 U.S.C. § 552a, and (2) Pennsylvania's Mental Health Procedures Act, 50 P.S. § 7101 et seq., relating to confidentiality of all documents concerning persons in treatment.[4]

Because the district court did not issue an opinion, we must speculate whether it

2. Webster's Third New International Dictionary 1187 (1966).

3. The illustrations under section 652B give examples of a photographer taking a picture of a hospital patient over her objection, a detective wiretapping a person's phone or using binoculars to view inside a private residence, a litigant using forged court papers to examine bank records of the opposing party, and a person who, in an effort to gain an audience with a prominent individual, refuses to desist making harassing phone calls. Restatement (Second) of Torts § 652B comment b, illustrations 1–5 (1977).

4. Although O'Donnell did argue the Pennsylvania Mental Health Act requirement in his reply brief, he failed to raise it in the district court or to assert it as a ground for reversal in his opening brief to this court. Because of its manifest application, we will consider this Act in the interest of justice. *See Selected Risks Ins. Co. v. Bruno,* 718 F.2d 67, 69 (3d Cir.1983).

predicted that Pennsylvania would recognize O'Donnell's negligence theory, although it rejected his claim, or if the court concluded that Pennsylvania courts would not recognize O'Donnell's negligence theory. Regardless of which analytical road the district court traveled, it had to engage in a prediction of Pennsylvania law. Our review of such prediction is plenary. *Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am.*, 724 F.2d 369, 371 (3d Cir.1983).

O'Donnell argues that the VA's negligent conduct violated numerous duties imposed upon it by the Federal Privacy Act as well as provisions under Pennsylvania's Mental Health Procedures Act of 1976 (MHPA). Although O'Donnell disclaims any claim for relief under the Privacy Act,[5] he does argue that the duties it requires of the VA are a predicate for his claim of negligent disclosure. Specifically, he claims that "the disclosure of the Eilers' treatment summary constituted a violation of the standards of conduct set forth by the Privacy Act, as well as being the proximate cause of injury to him," and that his second claim for relief "sets forth violations of federal law which would be actionable under local tort law" and cognizable under the FTCA. Section 552a subsection (g)(4) of the Privacy Act, however, provides that suits may be brought for damages under subsections (g)(1)(C) or (D) only if the court determines that the agency acted in an intentional or willful manner.

As can be expected, the Government argues that the Privacy Act offers the only ground for finding liability against a federal entity for violation of O'Donnell's privacy interest in his medical records. If the Government is correct, O'Donnell has no claim under the Privacy Act because he makes no claim that the VA's conduct in

releasing his treatment summary was intentional or willful.[6] The Government cites two district court cases as authority for its broad proposition that a remedy against a federal entity for a violation of a person's privacy interest is only in the Privacy Act and not under the FTCA. *See Zeller v. United States*, 467 F.Supp. 487, 505 (E.D. N.Y.1979), and *Druckenmiller v. United States*, 548 F.Supp. 193, 195 (E.D.Pa.1982). Both of these cases are inapposite; *Zeller* involved New York law and *Druckenmiller* engaged in no discussion of the Privacy Act. Nonetheless, some grist may be found for the Government's argument. Because Congress enacted the Privacy Act many years after the FTCA, one might plausibly argue that, although Congress expanded the scope of possible privacy violations under the Privacy Act, it intended to limit all suits for violations of a person's privacy rights against federal entities to intentional and willful violations.

An examination of the legislative history of the Privacy Act convinces us, however, that Congress enacted this legislation because of its recognition that, with modern and advancing computer technology, the Federal Government was creating national data banks in which it was storing enormous centralized information systems which without certain statutory guarantees would "threaten the observance of the values of privacy and confidentiality in the administrative process." S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6916, 6930. Congress enacted the Senate bill in lieu of the House bill and the Senate Report notes, inter alia, that the purpose of the Privacy Act "is to promote governmental respect for privacy of citizens by requiring all ... agencies of the executive branch and their

---

**5.** In his opening brief, counsel for O'Donnell stated:

O'Donnell's second claim ... is not a Privacy Act claim, but rather a suit for negligent conduct under the Federal Tort Claims Act, supra.

**6.** O'Donnell stated in his memorandum of law opposing summary judgment in the district court:

Plaintiff does not dispute that the Privacy Act requires a showing of intentional or willful

disclosure. It is precisely because of the difficulties attending this burden of proof that plaintiff elected to proceed under the Federal Tort Claims Act, rather than the Privacy Act. He therefore refers us to the Pennsylvania MHPA and Pennsylvania's willingness to recognize, at least at common law, the liability of a federal employee for negligence in maintaining complete and accurate employment records.

employees to observe certain constitutional rules in the computerization, collection, management, use, and disclosure of personal information about individuals." *Id.* at 6916. The Senate Report also reveals that the Congress, in enacting the Privacy Act, was interested in providing "a way for an individual to prevent information about him that was obtained for one purpose [from] ... being used or made available for other purposes without his consent." *Id.* at 6924.

■ It is evident that Congress did not intend, by enacting the Privacy Act, to limit the privacy rights of individuals, nor did it intend to limit their remedies for invasions of those privacy interests. In fact, the Senate Report specifically notes:

S. 3418 is further needed *to complement State and municipal laws and regulations* which have been adopted to protect individual privacy and confidentiality of records, and which, in some cases, provide more detailed and more effective protections than S. 3418. Governors and others have expressed concern that despite all the States may do to provide guarantees, they are not effective once the data are integrated in a Federal information system or transferred to a Federal data bank. S. 3418 will safeguard and supplement the efforts of State legislatures.

*Id.* at 6932 (emphasis added). We, therefore, hold that the Federal Privacy Act of 1974 does not limit the remedial rights of persons to pursue whatever remedies they may have under the FTCA for violations of their interests in personal privacy.

7. *See Wolfe v. Beal,* 477 Pa. 477, 384 A.2d 1187 (1978):

To protect patients of any harm that could result from careless dissemination of these records ... the legislature has coupled the directive that records be maintained with strict requirements to ensure their confidentiality.

*Id.* 384 A.2d at 1190. (Pomeroy, J., dissenting) (citing Section 111 of the MHPA of 1976).

8. Section 113 is entitled "Rights and remedies of persons in treatment" and provides:

Every person who is in treatment shall be entitled to all other rights now or hereafter provided under the laws of this Commonwealth, in addition to any rights provided for in this act. Actions requesting damages ...

We need not tarry long on plaintiff's subtle argument that the Privacy Act sets forth duties, even though he has no remedy under it, the breach of which may be enforced under the FTCA. The plaintiff has adequate remedies under Pennsylvania statutory law, see our discussion *infra,* and, therefore, there is no reason to dwell on this aspect of plaintiff's argument.

In enacting the MHPA, the Pennsylvania legislature mandated that health organizations, including federal health agencies, maintain the confidentiality of psychiatric records.[7] Section 111 of the MHPA provides in relevant part:

All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

* * * * * *

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent.

50 P.S. § 7111. Under Section 113 of the MHPA,[8] an equitable or legal action may be brought to enforce Section 111 and other MHPA Sections.[9]

and any other remedies or relief granted by law may be maintained in order to protect and effectuate the rights granted under this act.

50 P.S. § 7113.

9. *See, e.g., Kakas v. Commonwealth, Dept. of Pub. Welfare,* 65 Pa.Cmwlth. 550, 442 A.2d 1243 (1982) (affirming quashing of subpoena based on Section 111 of MHPA); *Yezerski v. Fong,* 58 Pa.Cmwlth. 566, 428 A.2d 736 (1981) (declaratory action); *Caronia v. Greenfeder,* 30 Pa. Cmwlth. 337, 374 A.2d 741, 743 (1977) ("Section 113 of the Procedures Act authorizes 'actions requesting damages'"); see also *Leonard v. Latrobe Area Hosp.,* 379 Pa.Super. 243, 549 A.2d 997, 998 (1988) (production of documents barred by Section 111 of the MHPA).

**1086**

The duties the MHPA imposes with respect to documents of persons in treatment are buttressed by case law. In *Quinones v. United States*, 492 F.2d 1269 (3d Cir. 1974) (before the effective date of the Privacy Act), we held that Pennsylvania would recognize a negligence action for damages of a former federal government employee for his employer's breach of duty to maintain complete and accurate employment records. The purpose of requiring that employment records be both complete and truthful is because it can be anticipated that the information they contain will be disseminated. Because Pennsylvania courts are concerned about the process of accumulating confidential information, they are equally concerned about the process of its dissemination.

The unauthorized release of accurate psychiatric records implicates potentially greater injuries than those suffered from the dissemination of false employment records. First, the unauthorized release of psychiatric records allows a reader a voyeur's view of the patient's life. The patient can suffer damage from the simple awareness that his whole life, or an uncomfortably private part of it, has been exposed to an uninvited viewer. Of course, the viewer's use of that private information may lead to consequential damages such as a loss of employment, as alleged in this case. Second, assuming the psychiatric record's contents are correct, a legal remedial action to rehabilitate a person's public esteem or image may be wholly inadequate. Therefore, great care must be taken to maintain the confidentiality of psychiatric records.

The Pennsylvania Supreme Court has strongly expressed its views on the necessity for psychiatric record confidentiality. The court in *In Re B.*, 482 Pa. 471, 394 A.2d 419, 426 (1978), noted that "persons seeking psychiatric help are expected to 'lay bare' their 'entire self' to the therapist and may admit to embarrassing or shame-

ful thoughts to obtain healing results. Such revelations deserve confidentiality." *Com. ex rel. Gorto v. Gorto*, 298 Pa.Super. 509, 444 A.2d 1299, 1301 (1982) (referring to opinion of *In Re B.*).

The Pennsylvania Supreme Court has gone so far as to declare that there is a constitutional right to confidentiality of psychiatric records. In *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73, 77 (1980), the Pennsylvania Supreme Court stated that a privacy interest in avoiding the disclosure of medical records found "explicit protection in the Pennsylvania Constitution, Art. 1, § 1." [10] Nonetheless, the court, in weighing the public interest at stake in that case, permitted a person's psychiatric records to be subpoenaed before an investigating grand jury with appropriate protection for the person's privacy interest by the county supervising judge.

We need not, on the facts before us, rest our disposition on a Pennsylvania constitutional footing in view of the duties established by Pennsylvania statute. In this case's context, we predict that the Pennsylvania Supreme Court would rule that, under the MHPA, caretakers of psychiatric records have a duty to protect the confidentiality of psychiatric records. Under MHPA Section 113, a private action for emotional, physical, and pecuniary damages may be brought for violations of MHPA Section 111. O'Donnell's damages are, thus, cognizable under the FTCA.

■■■ Having concluded that the MHPA allows a private action for the failure to maintain the confidentiality of psychiatric records, we must determine if summary judgment for the VA was appropriate. Under section 111(4) of the MHPA, the VA is only required to adhere to Federal rules, statutes or regulations. That subsection specifically permits the release of confiden-

**10.** *See also In re B.,* 482 Pa. 471, 394 A.2d 419 (1978).

We conclude that in Pennsylvania, an individual's interest in preventing the disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper

roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based.
*Id.* 394 A.2d at 425.

tial documents "pursuant to federal rules ... and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency." Therefore, to avoid summary judgment, O'Donnell must demonstrate that a genuine issue of material fact exists concerning whether the VA failed to abide by federal rules, or regulations in disclosing his psychiatric records.

The federal administrative regulations detail the VA's duties in disclosing records in its custody. 38 C.F.R. § 1.576 provides in pertinent part:

(a) The Veterans Administration will safeguard an individual against an invasion of personal privacy. Except as otherwise provided by law or regulation its officials and employees will:

* * * * * *

(4) Collect, maintain, use, or disseminate any record of identifiable personal information in a manner that assures that such action is for a necessary and lawful purpose, that the information is correct and accurate for its intended use, and that adequate safeguards are provided to prevent misuse of such information.

In the light of the VA's regulatory requirements, genuine issues of material fact exist whether O'Donnell requested the disclosure on December 13 of his treatment summary to his employer, was it otherwise authorized, and if not, did the VA disclose it contrary to law. O'Donnell personally wrote the response to the request for information in the consent form. He was familiar with this form, having made similar requests on prior occasions. Although he may have been careless or inept in completing the request form of November 21, the federal administrative regulations imposed certain duties on the VA in safeguarding an individual against an invasion of privacy. Pursuant thereto, the consent form at issue specifically provides that the "execution of this form does not authorize the release of information other than that specifically described below." The form has a space for "INFORMATION REQUESTED" but O'Donnell only wrote in the name and address of his superior at the Department of Labor. The defendant suggests that we look to the request form section titled "PURPOSES FOR WHICH THE INFORMATION IS TO BE USED" in which

O'Donnell wrote "Proof of Disability, Need for Reassignment" and, then, mentally transfer it to the block above designated for "INFORMATION REQUESTED." At the very least, there exists a genuine issue of material fact, suitable for a factfinder, as to whether the specificity of the information on the form was sufficient to authorize the release of O'Donnell's treatment summary on December 13, 1985. Under such circumstances, the district court should not have granted the Government's motion for summary judgment.

IV.

Accordingly, the district court's grant of summary judgment in favor of the Government on O'Donnell's claim of invasion of privacy will be affirmed. The district court's grant of summary judgment on O'Donnell's second claim for negligent disclosure will be vacated and the case remanded for further proceedings consistent with this opinion.