**F.P. WOLL & COMPANY, Plaintiff**

v.

**VALIANT INSURANCE COMPANY, Defendant**

**No. CIV.A. 99–0465.**

United States District Court, E.D. Pennsylvania.

Oct. 3, 2002.

William V. Coleman, Regina Cohen, Lavin, Coleman, O'Neill, Ricci, Finarelli & Gray, Philadelphia, PA, for plaintiff.

Vincent J. Iozzi, William T. Salzer, Swartz Campbell & Detweiler, Philadelphia, PA, for defendant.

## MEMORANDUM

POLLAK, District Judge.

Currently before this court is a motion for summary judgment filed by defendant Valiant Insurance Company ("Valiant"). After reviewing the parties' submissions on various insurance coverage issues, this

court will grant the motion for summary judgment in part and deny it in part.

## Procedural Posture

In January 1999, plaintiff F.P. Woll & Company ("Woll") brought a diversity action against Valiant based on an insurance coverage dispute. Both Woll and Valiant filed motions for summary judgment. This court in October 2001 granted leave to Woll to file an amended complaint with an added count of bad-faith denial of its insurance claim. At the same time, the cross-motions for summary judgment were dismissed as moot. On October 18, 2001, Woll did file an amended complaint incorporating a bad-faith claim. In the current motion for summary judgment filed on December 6, 2001, Valiant incorporated its previously mooted motion by reference and thereby raised anew the issues presented in its original summary judgment motion. In addition to its original arguments, Valiant's current motion seeks summary judgment with respect to Woll's newly added bad-faith claim. This court finds that triable issues of fact exist on all but one issue: Woll is not entitled to recover on its claim against Valiant for construction expenses at its new facility.

## Factual Background

Woll, a company engaged in the manufacture and production of hair-based cushioning products, held a commercial property insurance policy with Valiant. On January 29, 1996, a fire severely damaged one of two buildings at Woll's Comly Street manufacturing facility in Philadelphia ("the Comly facility"), destroying the factory and offices within. So that it might resume operations promptly, Woll entered into a lease on a building at Sandmeyer Lane in Northeast Philadelphia ("the Sandmeyer facility") in early February, 1996. The lease included the option to purchase, contingent on the level of environmental contamination found at the site (as the Sandmeyer facility was adjacent to a known Superfund site). Woll undertook to test the contamination of the site and discovered the presence of low trichloroethylene and PCB contaminants, along with possible elevated levels of heavy metals. Woll sought to minimize potential environmental liability for any future cleanup of the site, so it sought "Act 2" clearance under the Land Recycling and Environmental Remediation Standards Act, 35 P.S. § 6026. Act 2 clearance would allow the company to obtain a release of liability for remediation of any toxic contaminants on the property at pre-purchase levels as long as the contaminants fell within certain regulatory parameters. Eventually, in July of 1998, Woll purchased the Sandmeyer facility, although the company did not obtain the Act 2 release until later.

The Sandmeyer facility's office space comprised about 2000 square feet, about half the office space that the Comly facility offered. From 1999 until 2000, plaintiff constructed expansions to both the office and warehouse space at the Sandmeyer facility.

The parties reached agreement on some of the claims Woll made in the aftermath of the fire, and, as of May 1998, Woll had received $1,200,726.20 for loss of business income and extra expense, as well as $1,043,971.25 for the loss of the Comly facility. Woll's lawsuit is based upon additional claims it asserts should be paid under its "extra expense" policy with Valiant. Among the claims which Woll alleges are properly payable under the policy are the following: legal and negotiation fees, the cost of environmental testing, construction costs (for the Sandmeyer office, not the Sandmeyer warehouse), and architectural fees (office only). Valiant denies the legitimacy of the claims, taking the position that the costs and fees were not "extra ex-

penses" within the meaning comprehended by the policy.

**Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of a genuine issue of material fact is reflected in evidence from which a reasonable juror could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court must view the evidence, and draw all reasonable inferences, in the light most favorable to the non-moving party. *See Dici v. Commonwealth*, 91 F.3d 542, 547 (3d Cir.1996). However, the non-moving party may not defeat a motion for summary judgment by the mere assertion, not documented by record evidence, that the facts are sufficient to support his or her claims. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir.1989). Where the nonmoving party "bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n. 5 (3d Cir.1998) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n. 2 (3d Cir.1998)).

**The Policy**

Because the parties' dispute stems from different interpretations of the insurance policy, reproducing the relevant "extra expense" provision is appropriate:

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(1) We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations":

(a) At the described premises; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Costs to equip and operate the replacement or temporary locations.

(2) We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations."

(3) We will pay any Extra Expense to:

(a) Repair or replace any property; or

(b) Research, replace or restore the lost information on damaged valuable papers and records,

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

The policy then defines "period of restoration" as the period of time that:

a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**Analysis**

Valiant has moved for summary judgment based on the following allegations:

(1) the fees incurred were not necessary and were unrelated to the resumption of business;

(2) the fees incurred were outside the "period of restoration";

(3) Woll has already been paid for expansion costs;

(4) Woll's damages may not include claims incurred after the filing of the complaint;

(5) Woll's damages may not include claims never presented to Valiant for adjustment; and

(6) there is no basis for a bad-faith claim if Valiant's denial of coverage was proper.

Each of these points for summary judgment will be addressed in turn. Ultimately, the court finds only the third issue raised to be availing for the defendant. *Were the fees necessary, related to resumption of business, and within the "period of restoration"?*

■ As for the first two issues, due to the uncertainty surrounding what precisely the "period of restoration" would have been for Woll and what expenses would be "necessary," this court declines to grant summary judgment. The policy provisions at least conceivably could cover the expenses Woll undertook in ensuring that the Sandmeyer facility was a suitable replacement for the Comly facility. This court cannot hold as a matter of law that those costs were not necessary, were not related to resumption of Woll's business, or were incurred outside the "period of restoration," as those terms are defined in the policy.

*Has Woll already been paid for expansion costs?*

■ In its third issue, Valiant asserts that Woll has already been compensated for the construction and architectural expenses attendant on expanding its office space at the Sandmeyer facility from 2000 square feet to 4000 square feet. On this point, the court agrees that Valiant is entitled to a partial summary judgment.

According to Valiant, the $1,043,971.25 payment to Woll incorporated an estimated amount to construct the office-space expansion at the Sandmeyer facility. Valiant explains that said payment was tendered pursuant to a provision of the policy, separate from the extra-expense language quoted above, providing for replacement of destroyed buildings. Young Adjustment Company was hired by Woll to negotiate insurance payments with Valiant; Young's employees describe the process by which the parties settled upon the million-dollar-plus figure. The parties agreed that the cost of rebuilding the Comly facility would have been $1,168,567.35, and that the depreciation and applicable "holdback" value was $89,309.54. Subtracting the holdback and advances from the rebuilding cost, the parties arrived at an actual cash value (ACV) claim of $1,043,971.25, which was paid to Woll. According to Richard Burr, a Young employee, at least a portion of the holdback amount might later be recovered by the insured if the actual replacement cost turns out to exceed the ACV payment, which is based partially on estimates of future expenditures. Therefore, the understanding of the holdback was that if Woll "actually spend[s] the money for whatever purpose on the building they can get up to another $89,000." Burr deposition at 14. Burr further testified that, in fact, $21,997 was eventually paid to Woll as a settlement out of the holdback amount. *Id.* at 29. The rebuilding costs used in calculating the appropriate holdback settlement figure, Burr noted, were based upon the parties' agreed estimate of the expenses that would be incurred in adding office space to the Sandmeyer facility. *Id.* at 29–30. The spreadsheet exhibit that reflects the calculation of the holdback settlement shows that the amount estimated

for the office addition was $235,000.00. *See* Burr Exhibit 3.

In its January 2001 interrogatory response, Woll stated that it had incurred an expense of $244,260.00 as a "cost of office construction." In its motion for summary judgment, Valiant protests that the "cost of office construction" was already recompensed in the ACV payment for the Comly facility and the subsequent holdback settlement. To hold Valiant liable for that amount in the current litigation, the insurer argues, would force it to pay twice for the same loss. In its March 2001 reply brief, Woll makes the conclusory pronouncement that "the Wolls deny that the office space expansion or its associated architectural fees have been paid." However, Woll points to no evidence supporting that proposition. In fact, Frederick Woll admits that the claim for $244,260.00 seeks to recover "construction expenses ... for office space ... to be the equivalent of the office space that [Woll] had at Comly." But in the very next deposition response Woll testified that his company had been "paid for the [Comly] building." Woll deposition at 144. Burr, who handled insurance negotiations for Woll, states that the ACV is the "agreed upon dollar amount as to the cost for replicating the Comly Street location prefire," Burr deposition at 7, and reflected the cost of replacing the building "at the same square footage, the same type of building, and same offices ...." *id.* at 13. "[E]ven though [at the time of the ACV payout] the policy holder might not have incurred architect's fees or construction fees actually paid out, the estimates of those fees are included in the million dollar figure." *Id.* at 13–14. After the holdout settlement, Burr "wouldn't expect then to see a claim for architectural and construction expenses for 200,000 for the building." *Id.* at 14.

In sum, all parties agree that Woll was compensated for the replacement cost of the Comly facility. Woll's statement in its reply brief that "the Wolls deny that the office space expansion or its associated architectural fees have been paid" does not comport with any of the evidence presented to this court. As mentioned previously, a non-moving party may not defeat a motion for summary judgment by the mere assertion, not documented by record evidence, that the facts are sufficient to support his or her claims. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *O'Donnell v. United States,* 891 F.2d 1079, 1082 (3d Cir.1989). Here, there is no record evidence countering Valiant's insistence that Woll has already been compensated for the costs of expanding the office space at the Sandmeyer facility. Valiant is entitled to summary judgment on the claim for office-space construction costs to the extent that an estimate of that amount is reflected in the ACV payment and holdback settlement that Woll accepted.

*Claims incurred after filing of the complaint*

█ In reliance on the Pennsylvania Supreme Court's ruling in *Summers,* Valiant seeks to avoid liability for any expenses that had not accrued at the time Woll filed its complaint. *Summers v. Prudential Ins. Co.,* 319 Pa. 270, 179 A. 78 (1935). In *Summers,* an insurance dispute, the state court held that it was error to "permit[ ] recovery of installments accruing in the interim between [the date of the commencement of the action] and the date of trial." *Id.* at 79. This court notes that at least one Pennsylvania state court has observed that the *Summers* rule may be readily obviated by amending pleadings to reflect damages that have accrued since the filing of an original complaint. *See Galloway v. World Mut. Health & Acci-*

*dent Ins. Co. of Pa.*, 13 Pa. D. & C.3d 617, 620 (Pa.Com.Pl.1980) (weighing *Summers* and stating: "We certainly can see no difficulty in sustaining an allegation claiming damages to the filing of the amended complaint."). The *Galloway* court also noted that a Pennsylvania procedural rule, effective in 1947, appears to abrogate *Summers* and allow damages to be computed up until the time of trial. *Id.; see also* Pa. R.C.P. 1033 ("The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted."). This court has recently seen firsthand the bizarre repercussions of a strict interpretation of the *Summers* holding: in *O'Shea v. Mutual Life Ins. Co.*, 226 F.Supp. 660 (E.D.Pa. 2002), the plaintiff sought to circumvent the strictures of the 1935 case by dismissing her complaint and filing a new one with updated damage calculations. Such an artifice, this court advised, was as unnecessary as it was inefficient; merely to amend the complaint would achieve the same end.

In light of the questionable continuing vitality of *Summers*—and the fact that the amount of damages claimed may be updated simply by filing an amended complaint, as the plaintiff did here—summary judgment on this point is denied.

*Claims never presented to Valiant for adjustment*

██ Next, Valiant asks this court to preclude recovery on any claimed amount not previously presented to the insurer. Valiant objects to Woll listing amounts in its interrogatory response regarding monetary claims that were never proffered for adjustment. The court's attention is directed to a portion of Woll's policy that requires "sworn proof of loss" before a

claim may be paid. Now that this lawsuit has been pending for a few years, the defendant's claim that it was "denied the opportunity to consider and adjust [certain] fees" seems somewhat disingenuous. In the course of discovery, Valiant should be able to obtain whatever information it might desire regarding the basis for any given claim. The needs underlying the requirement for "sworn proof of loss," this court suggests, are amply satisfied by the discovery process. Summary judgment is denied on this point.

*Woll's bad-faith claim*

Lastly, Valiant seeks summary judgment on Woll's recently added claim for bad-faith denial of coverage. Valiant argues that, if the claims were not covered in the first place, denying them would not be an act of bad faith. Because the court has denied summary judgment on most of the plaintiff's claims, the antecedent step to Valiant's desired result is not present: as of now it is not clear that Woll's claims were not viable. Therefore, the plaintiff's bad-faith claim is not foreclosed as a matter of law. Summary judgment will be denied on this issue.

**Conclusion**

In an order accompanying this memorandum, defendant's summary judgment motion is granted in part and denied in part. The motion is granted with respect to Woll's claim for office-space construction costs to the extent that an estimate of that amount is reflected in the ACV payment and holdback settlement that Woll accepted, and denied in all other respects.

**ORDER**

AND NOW, this 3 day of October, 2002, for the reasons stated in the accompanying memorandum:

(1) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff

F.P. Woll's claim for office-space construction costs.

(2) Defendant's Motion for Summary Judgment is DENIED in all other respects.