Cara ALEXANDER, et al., Plaintiffs,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

Civil Action No. 96–2123 (RCL).

United States District Court,
District of Columbia.

June 12, 1997.

Larry Klayman, Klayman & Associates, Washington, D.C., for Plaintiffs.

FBI & Executive Office of the President, Frank Hunger, David Anderson, James Gilligan, Elizabeth Jane Shapiro, Dept. of Justice, Civil Division, Washington, D.C., for Defendants.

David Evan Kendall, Williams & Connolly, Washington, D.C., for Hillary Rodham Clinton.

James Franklin Fitzpatrick, Arnold & Porter, Washington, D.C., for Bernard Nussbaum.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on the several motions of defendants as well as plaintiffs' motion to certify a class. Upon consideration of the parties' written submissions, oral arguments and the relevant law, for the reasons set forth below, the court will deny the Executive Office of the President's Motion to Dismiss Count II, deny the Feder-

al Bureau of Investigation's Motion for Summary Judgment on Count I, grant the government defendants' Motion to Dismiss Plaintiff Patrick Adam Beers, deny the government defendants' Motion to Limit Plaintiffs' Damages, deny Hillary Rodham Clinton's Motion to Dismiss Count III, deny the government defendants' Motion to Strike the Class Action Allegations, and deny plaintiffs' Motion for Attorneys' Fees and Costs. The court will defer deciding plaintiffs' Motion for Class Certification, and the United States' Motion to Dismiss for Failure to Exhaust Administrative Remedies, until plaintiffs have had an opportunity to take discovery herein.

## I. Background

The allegations in this case arise from what has become popularly known as "Filegate." According to their complaint, plaintiffs allege that the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush administrations. Plaintiffs further aver that the requests for the files came from defendants Bernard Nussbaum, David Craig Livingstone, and Anthony Marceca, who were allegedly acting outside the scope of their employment and at the request of defendant Hillary Rodham Clinton. Plaintiffs allege that these actions were taken for partisan political purposes in order to obtain potentially embarrassing and damaging information on former Reagan and Bush administration personnel.

From this set of facts, plaintiffs aver three causes of action. Count I alleges a violation of the Privacy Act by the FBI for improper maintenance of the files which resulted in their disclosure to the White House without any lawful justification. Count II alleges a violation of the Privacy Act by the White House for maintaining the files for no lawfully recognized purpose. Count III alleges a common law tort of invasion of privacy against Mrs. Clinton, Nussbaum, Livingstone, and Marceca for requesting the files for an improper purpose.

The five named plaintiffs are Cara Leslie Alexander, Patrick Adam Beers, Marjorie Anne Bridgman, Joseph Nelson Cate, and David Lee Black. They are suing on behalf of themselves and all others similarly situated, and seek to maintain this case as a class action. The named defendants are the Federal Bureau of Investigation (FBI), the Executive Office of the President (EOP), First Lady Hillary Rodham Clinton, former White House Counsel Bernard W. Nussbaum, former Director of the White House Office of Personal Security (OPS) David Craig Livingstone, and former OPS employee Anthony Marceca.

## II. Executive Office of the President's Motion to Dismiss Count II

■ The government has moved the court to dismiss Count II for lack of jurisdiction because the Office of Personnel Security and the Office of Records Management, each units within the Executive Office of the President, are not agencies subject to the Privacy Act.

The Privacy Act of 1974 governs federal agencies' acquisition, maintenance, use and disclosure of information concerning individuals. Under the Act, agencies may maintain "only such information about an individual as is relevant and necessary to accomplish a purpose of the agency as required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). The Act also specifies that agencies maintaining such information shall "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity...." 5 U.S.C. § 552a(e)(10).

In addition, the Act prohibits an agency from disclosing information about an individual in its records without the individual's consent, unless one of several exceptions applies. 5 U.S.C. § 552a(b). The exception most likely relevant to this case allows agencies to disclose information pursuant to a "routine use," meaning any use of a particular record which is compatible with the purpose for which the record was collected, as long as the routine use is published in the

Federal Register. 5 U.S.C. §§ 552a(a)(7), (b)(3) & (e)(4)(D).

The Act grants federal courts jurisdiction to hear claims that an agency subject to the Act has failed to comply with its requirements. 5 U.S.C. § 552a(g)(4). On behalf of the EOP, the government argues that Count II must be dismissed because the OPS and ORM are the only two groups within the EOP that maintained the files and neither are agencies subject to the Privacy Act. The government premises its argument on the interpretation courts have given the word "agency" when applying the Freedom of Information Act (FOIA).

Instead of providing a definition for "agency" in the Privacy Act, Congress stated that the term means "agency" as defined in section 552(e) of FOIA, Title 5 of the U.S.C.[1]

FOIA defines "agency" as

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of Government (including the Executive office of the President), or any independent regulatory agency. 5 U.S.C. § 552(f).

Although the plain language of this statute includes the EOP as an "agency" which is accountable under FOIA, the courts, bearing in mind the purposes of the statute and the legislative history, have interpreted the definition to exclude the President's immediate personal staff and units within the EOP whose sole function is to advise and assist the President. *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 156, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980).

While it is true that Congress adopted the statutory definition of "agency" as used in FOIA for the Privacy Act, no court has provided the term "agency," as used in the Privacy Act, with the same interpretation which excludes from the plain language the President's personal staff and units whose sole function is to advise and assist the President. Recognizing the very different purposes the two statutes serve, this court will not be the first.

The chief purpose of FOIA is to provide citizens with better access to government records than first provided under the Administrative Procedures Act. *Soucie v. David,* 448 F.2d 1067, 1076 (D.C.Cir.1971). As stated by the D.C. Circuit, "FOIA is intended to enlighten citizens as to how they are governed." *Sweetland v. Walters,* 60 F.3d 852, 855 (D.C.Cir.1995). By providing exceptions for the disclosure requirements, Congress was balancing between the "public interest in freedom of information and countervailing public and private interests in secrecy." *Soucie,* 448 F.2d at 1076.

In contrast, the Privacy Act was adopted in order to "provide certain safeguards for an individual against an invasion of personal privacy." Section 2(a)(4), Preamble to the Privacy Act, 5 U.S.C. § 552a(a) note. Congress recognized the need of the government to have sensitive information on individuals and provided the means by which the government could maintain this type of information and adequately protect the rights of individuals.

Thus, the concerns of FOIA and the Privacy Act are quite different. When passing FOIA, Congress was addressing the need for individuals to have access to government information. When passing the Privacy Act, Congress was addressing the need for individuals to have protection for their privacy concerns. In interpreting the word "agency" to exclude, under FOIA, the immediate staff of the President, the courts recognize, as Congress did, that the access provided by FOIA must be limited. However, no court has found, and there is no evidence that the privacy protections provided by Congress in the Privacy Act must also be necessarily limited. Through the several exceptions to the restrictions on information covered by the Privacy Act, the President and those who work for the President will always have access necessary for the many executive decisions. Thus there is no need to ignore the

---

1. As noted by the government, until 1986, 5 U.S.C. § 552a(e) codified the definition of "agency." After the Anti–Drug Abuse Act of 1986, the definition was recodified at 5 U.S.C. § 552(f). There was no substantive change to the definition, and no technical conforming amendment was made to the Privacy Act.

plain language of the statute and limit the word "agency" as has been done under FOIA.

The government's last attempt to find support for their position is to rely on a D.C. Circuit case in which the court concludes that because a group is not an "agency" for FOIA purposes, it is necessarily not an "agency" for the Sunshine Act because the Sunshine Act expressly incorporates the definition used in FOIA. *Rushforth v. Council of Economic Advisers,* 762 F.2d 1038, 1043 (D.C.Cir.1985). In light of this court's conclusion that the different purposes of FOIA and the Privacy Act do not mandate the same interpretation, this case is not persuasive. Unlike the Privacy Act, the Sunshine Act serves the same purposes as FOIA by providing individuals with access, not protection for individual rights.

Words in statutes must be construed within the statutory scheme in which they appear, and this court holds that under the Privacy Act, the word "agency" includes the Executive Office of the President, just as the Privacy Act says. Therefore, the motion to dismiss Count II is denied.

### III. Federal Bureau of Investigation's Motion for Summary Judgment on Count I

██On behalf of the FBI, the government moves for summary judgment on Count I arguing that as a matter of law, the FBI did not violate any provision of the Privacy Act by either providing the files to the White House or by failing to establish appropriate safeguards. The court will deny this motion as premature as plaintiffs have demonstrated that discovery is required. There do appear to be genuine disputes of material fact and plaintiffs are entitled to take discovery on these matters.[2]

FBI Director Louis J. Freeh has himself described what occurred in this case as "egregious violations of privacy" in his Statement of June 14, 1996, attached to defen-

dants' Motion as Exhibit 1. He describes the system as having failed, and concedes that this failure "affected the privacy rights of many persons." Although Mr. Freeh's General Counsel, Howard M. Shapiro, conducted an inquiry between June 5 and June 14, 1996, and submitted a report, Mr. Shapiro indicated that his inquiry did not attempt to provide definitive answers to all of the questions which naturally arise from these events, and that no White House personnel had been interviewed in his inquiry. Until plaintiffs have had an opportunity to conduct appropriate discovery, the FBI cannot be entitled to summary judgment.

### IV. Government's Motion Concerning Patrick Adam Beers

██ The government defendants have moved to dismiss plaintiff Beers from the case because the FBI had no information on him and thus disseminated no information about him to the White House. In support, the government defendants supplied the court with appropriate affidavits. Plaintiffs never objected to this motion, and the court will grant it as conceded.

### V. Government's Motion Concerning Damages

██ The government has moved this court to limit plaintiffs' damages to economic losses, arguing that the Privacy Act does not permit recovery for nonpecuniary injuries. Adopting the thorough analysis used by the Fifth Circuit in *Johnson v. Department of Treasury,* 700 F.2d 971, 986 (5th Cir.1983) and followed by *Dong v. Smithsonian Institution,* 943 F.Supp. 69 (D.D.C.1996), the court will deny the government's motion and allow plaintiffs to pursue noneconomic damages.

### VI. Mrs. Clinton's Motion to Dismiss Count III

Mrs. Clinton has moved this court to dismiss Count III under Rule 12(b)(6), Fed.

---

2. The government attempts to rely on the investigations conducted by Congress and by Independent Counsel Kenneth W. Starr as well as media attention to support its argument that all relevant facts are now in the public record. The court rejects this weak attempt to avoid discovery. The public record was not developed with the legal rights of these plaintiffs in mind, and such investigations are not substitutes for discovery under the Federal Rules of Civil Procedure.

R.Civ.P., for failure to state a claim. Mrs. Clinton argues that the Privacy Act provides the exclusive remedy for any mishandling or misuse of plaintiffs' FBI files. Additionally, Mrs. Clinton argues that plaintiffs have failed to state a prima facie case of the relevant invasion of privacy tort. Although all of the defendants did not formally join her motion to dismiss [3], if Mrs. Clinton's arguments succeed, it is clear that the cause of action must be dismissed against the other defendants named in Count III, *i.e.* nominal defendants Nussbaum, Livingstone, and Marceca.

When assessing a motion to dismiss under Rule 12(b)(6), plaintiffs' factual allegations must be presumed true and should be liberally construed in favor of plaintiffs. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should be dismissed only if it appears beyond doubt that no set of facts proffered in support of plaintiffs' claim would entitle them to relief. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987); *Phillips*, 591 F.2d at 968.

A. Failure to State a Claim

■ Mrs. Clinton's first argument in support of her motion to dismiss is that the factual allegations made by plaintiffs do not constitute a common law claim for invasion of privacy because "there is simply no precedent under District of Columbia common law for any privacy tort action arising out of the transfer of personal data from part of the government to another." Def. Motion to Dismiss Count III at p. 4. Furthermore, Mrs. Clinton argues that courts have consistently refused to find a violation of a privacy tort when the relevant conduct is the obtaining of information about the plaintiff that is created and maintained by third parties.

■ As noted by both parties, under D.C. law, "[i]nvasion of privacy is not one tort, but

a complex of four, each with distinct elements." *Wolf v. Regardie*, 553 A.2d 1213, 1216–17 (D.C.1989). Plaintiffs have argued that defendants committed the tort of intrusion into one's seclusion, which has three elements: "1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; 2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; 3) that would be highly offensive to an ordinary, reasonable person." *Wolf*, 553 A.2d at 1217 (citations omitted).

Despite the characterization of Mrs. Clinton, this is not a case concerning the transfer of information from one part of the government to another. As alleged by plaintiffs, this is a case of individuals acting on their own behalf, not that of the government, to obtain information maintained by the FBI. Thus the argument that D.C. case law has never allowed for this tort to be applied to the transfer of information from one part of the government to another is simply not relevant.

Mrs. Clinton's second argument is that the tort cannot be applied in this situation because individuals cannot have a privacy interest in information that is created and maintained by third parties, such as the FBI files. As support, Mrs. Clinton relies on *Wolf v. Regardie, supra, Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985), and *Nagy v. Bell Telephone Co. of Pennsylvania*, 292 Pa.Super. 24, 436 A.2d 701 (1981). Citing the Restatement (Second) of Torts, in *Wolf* the District of Columbia Court of Appeals stated that the intrusion into seclusion tort "was not created to protect against ... the garnering of information from third parties, and the culling of facts from public records. Gathering information about appellant from third parties, even if pursued using subterfuge and fraud, cannot constitute ... an intrusion upon [an individual's] solitude or seclusion." *Wolf*, 553 A.2d at 1218 (quoting *Rifkin v. Esquire Publishing*, 8 Media L. Rptr. (BNA) 1384, 1386 (C.D.Cal.1982)).

---

3. Defendants Nussbaum and Livingstone did join Mrs. Clinton's Motion, but on February 18, 1997,

the United States was substituted for them, mooting their Motions to Dismiss at this time.

However, examining the facts of *Wolf* illuminates why the alleged factual circumstances of this case are different and why the above language cannot be read to prohibit liability in this case. In *Wolf,* plaintiff was suing a magazine alleging that the research done by the magazine staff into his business affairs was an intrusion into his seclusion that was intentional because the staff knew of his desire to not be named in any articles. However, all of the information gathered and used in the articles was a "matter of public record or knowledge readily available to anyone who would wish to ascertain it." *Id.* at 1218. For example, much of the information was available from public court documents. Although the contents of these FBI files is not a part of the record at this time, the only reasonable inference from the facts alleged here is that at least some of the information allegedly retrieved by defendants is not the kind of information easily accessible or available from a public record. Thus the information allegedly sought in this case is unlike that retrieved by defendants in *Wolf.*

The other cases relied upon Mrs. Clinton are also distinguishable. In *Nagy v. Bell Telephone Co. of Pennsylvania,* plaintiff sued the telephone company for divulging the telephone numbers of calls from her house when she had informed the company of her desire to not have the numbers released. Additionally, she sued the individual who had requested the numbers alleging the tort of intrusion upon seclusion. However, the court concluded that obtaining the telephone numbers could not be considered "a highly offensive or objectionable act whose commission would lead to tort liability." *Nagy,* 292 Pa.Super. 24, 436 A.2d 701, 704 (1981). Because the act was not committed in a manner to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities, it could not be the basis for liability for a privacy invasion. *Id.* (citations omitted).

Similarly, in *Chicarella v. Passant,* the plaintiff sued an investigator for obtaining from a hospital a list and brief description of the ailments for which the hospital had treated plaintiff. *Chicarella,* 343 Pa.Super. 330, 494 A.2d 1109, 1114 (1985). In upholding the lower court's granting of a demurrer, the court concluded that the facts did not establish a substantial intrusion of a highly offensive nature. The description of the medical treatments was brief, and again was not of the kind that would cause mental suffering, shame, or humiliation. *Id.*

Again, the set of facts alleged by plaintiffs here is far different from that found by the Pennsylvania courts in *Nagy* or *Chicarella.* Plaintiffs have alleged that the sole purpose of defendants' acts was to obtain embarrassing or damaging information on former employees of the White House for partisan political purposes. Unlike a listing of telephone numbers or a brief description of medical treatment, the only reasonable inference from the facts alleged is that the information contained in an FBI file is far more personal, and the court concludes that the collection of this information could cause outrage, shame, or humiliation to a person of ordinary sensibilities. Because of this, dismissal of the claims would be inappropriate.

Having noted that the factual differences distinguish this situation from those in the cases cited by Mrs. Clinton, the court must still determine if plaintiffs can have a privacy interest in their FBI files. Even though the files are maintained by the FBI, a third party, the court concludes plaintiffs can have an interest because of the role each plaintiff is alleged to have had in the creation of the files and the understanding each plaintiff is alleged to have had when making the decision to cooperate. It is a reasonable inference from the complaint that when plaintiffs cooperated with the FBI during their field examinations, they did so with the belief that their FBI files would not be available for any purpose other than the required government clearance. Thus the files, although not in plaintiffs' direct control, were still a part of their private and secret concerns. However, the court also recognizes that there is a limitation to the interests of plaintiffs because at no point have plaintiffs alleged that they were the sole source of the information in the files. Further discovery is required to determine the extent to which the information contained in the files was gathered with the help and knowledge of plaintiffs.

Plaintiffs have properly alleged a prima facie case of the privacy tort of intrusion into seclusion. They allege that the defendants named in Count III intruded, through the collection and examination of the FBI files, into their private concerns which was highly offensive and resulted in mental distress.

### B. Preemption

■ Mrs. Clinton also contends that the common law tort for invasion of privacy is preempted by the Privacy Act. Mrs. Clinton argues that the Privacy Act "comprehensively regulates the collection, maintenance, use, and dissemination of information by the federal government about citizens" and thus "provides the exclusive remedy for the alleged misuse of plaintiffs' FBI security clearance." Mrs. Clinton's Motion to Dismiss at 9.

To understand why Mrs. Clinton's argument fails, it is first important to understand the differences between Counts I, II, and III. Counts I and II are against recognized government entities for failure to maintain government records in a lawful manner in violation of the Privacy Act. Count III, while against three former White House employees and the First Lady, is not an attempt to correct a wrong caused by improper governmental action. Instead, plaintiffs specifically allege that the actions which they believe constitute the tort were taken by the defendants as individuals outside the scope of their employment. As such, the Privacy Act does not provide a remedy and plaintiffs must look to the common law.

For support for her preemption position, Mrs. Clinton looks to several cases in which the court held that the Privacy Act would not allow the plaintiffs to pursue a *Bivens*[4] claim against the individual FBI employees who they allege improperly maintained their files. *Blazy v. Woolsey,* 1996 WL 43554, *1 (D.D.C. Jan. 31, 1996), *Mittleman v. United States*

*Treasury,* 773 F.Supp. 442, 450 (D.D.C.1991). The court agrees with the outcome of these cases. However, this case law does not resolve the issue presented in this case. As plaintiffs correctly argue, while Congress' consideration and ultimate rejection of liability for individual government employees under the Privacy Act may preclude *Bivens* claims, this logic does not extend to the case at hand. In concluding that the Privacy Act precludes a *Bivens* action, the courts decided that Congress instituted a complete scheme for recovery when the *government* improperly maintains confidential information. This does not mean, and no court has concluded, that Congress intended to prohibit recovery under local law for torts committed by individuals who, although they are government employees[5], were acting outside the scope of their employment at the relevant time.

In fact, the Third Circuit reached the conclusion that the Privacy Act does not limit the rights of persons to sue federal entities under the Federal Tort Claims Act. *O'Donnell v. United States,* 891 F.2d 1079 (3rd Cir.1989). In reaching this conclusion, the court noted that "it is evident that Congress did not intend, by enacting the Privacy Act, to limit the privacy rights of individuals, nor did it intend to limit their remedies for invasions of those privacy interests." *Id.* at 1085.

Applying the general principles of preemption, the court concludes that preemption has not occurred. As plaintiffs argue, the text of the Privacy Act does not include *any* comments about the preemption of causes of action under local or state law and thus there is no *express* preemption. Additionally, there is no evidence that Congress *intended* to limit the privacy rights of individuals by occupying the relevant field. Instead, the evidence supports a finding that Congress intended to further the privacy rights of individuals by providing protection for government misuse. For these reasons, the

---

**4.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**5.** This assumes that Mrs. Clinton, as the "functional equivalent" of a government employee— *see Association of American Physicians and Surgeons, Inc. v. Clinton, et al.,* 997 F.2d 898

(D.C.Cir.1993)—can make this argument. This court had previously held that Mrs. Clinton is not a government employee, for purposes of interpreting the Federal Advisory Committee Act. *See Association of American Physicians and Surgeons, Inc. v. Clinton, et al.,* 813 F.Supp. 82 (D.D.C.1993).

court concludes that the Privacy Act does not preempt the common law invasion of privacy tort.

### VII. The United States' Motion to Dismiss Count III for Failure to Exhaust Administrative Remedies and Plaintiffs' Objection to the United States' Substitution for Defendants Nussbaum, Livingstone, and Marceca

■ The United States filed a notice of substitution for defendants Nussbaum, Livingstone, and Marceca on February 18, 1997, and simultaneously filed a motion to dismiss Count III as asserted against the United States for failure to exhaust administrative remedies. In response, plaintiffs have challenged the validity of the substitution, and have asked the court to find that the individual defendants were acting outside the scope of their employment.

■ Although a certification by the Attorney General's designee is *prima facie* evidence that an employee was acting in the scope of his or her employment, the certification, when challenged, is entitled to *de novo* review by this court. *Kimbro v. Velten,* 30 F.3d 1501, 1509 (D.C.Cir.1994). Having raised a genuine issue of material fact that the conduct was performed outside the scope of employment, plaintiffs are entitled to discovery before this court reaches the merits of the certification. For this reason, the motion to dismiss for failure to exhaust administrative remedies must be deferred.

■ The court must note that it expressly rejects the argument advanced by the United States that because the defendants were political appointees, it was within the scope of their employment to gather these FBI files for partisan political purposes, as plaintiffs allege. Such alleged conduct is not acting in the interest of the United States as employer. It may well be that discovery will disclose that these files were gathered through bureaucratic bungling, and not for improper partisan political purposes. The court cannot conclude, however, at this stage, that plaintiffs' allegations are too conclusory or that they have no basis. The circumstantial evidence cited by plaintiffs is clearly suf-ficient to give them an opportunity to discover the true facts in this case.

### VIII. Government Defendants' Motion to Strike Class Action

■ Allegations and Plaintiffs' Motion for Class Certification Government defendants, joined by Hillary Clinton, have moved this court to strike the class allegations contained in the complaint. Defendants argue first that any motion to certify would be untimely and second that a class action would necessarily be inappropriate in this case. In response, plaintiffs filed an opposition to the motion as well as a motion for class certification. The court will withhold ruling on plaintiffs' motion pending discovery to determine if a class and possibly subclasses can be properly defined to meet the class action requirements of Rule 23, Fed.R.Civ.P.

■ Initially, the court will deny defendants' motion to strike the class action allegations and reject defendants' argument that the motion to certify is untimely. During the relevant time period, the court had stayed the case at the request of the government. It was reasonable for plaintiffs to think that the time was tolled for the filing of the motion until the defendants were required to respond to the complaint.

Plaintiffs have moved to certify the class under Rule 23(b)(3). To successfully certify the class under Rule 23(b)(3), plaintiffs must show that common questions of law and fact predominate in addition to meeting the requirements of Rule 23(a): commonality, numerosity, typicality of claims, and adequacy of representation.

Defendants have raised several issues that challenge the ability of a class to be successfully defined in this case. Initially, defendants question whether a class action would ever be appropriate in a suit under the Privacy Act because of the need for each plaintiff to show an adverse effect from the alleged violations of the Act. The court has similar concerns about the common law tort of invasion of privacy because as just held earlier, each plaintiff must have had an expectation that the information provided to the FBI was only to be used for a very limited purpose in

order to pursue a cause of action under the intrustion into seclusion tort. Additionally, the suggested class definition provided by plaintiffs does not provide any relevant time frame, and thus would not limit the class to those who have typical complaints as the named plaintiffs. Furthermore, the proposed definition suggests that the class include all whose files were improperly acquired by the White House. However, whether the files were improperly acquired is a contested issue in this case and not a proper way to determine the class.

Despite these possible problems, the court concludes that plaintiffs should have the chance to take discovery to determine if the class can be properly defined and if subclasses could be used for the maintenance of a class action. It is clear that there are common issues of law and fact that exist and plaintiffs should have the opportunity to separate the noncommon issues.

A final cut-off date for discovery on the class issues as well as a further briefing schedule will be set at a further status conference in this case.

### IX. Other Motions

Plaintiffs have moved for attorneys' fees and costs against the government defendants and their counsel for needlessly delaying this case and for seeking stays of discovery. The government and their counsel did nothing improper in seeking to first have the court decide a number of threshhold legal issues. Plaintiffs' motion for sanctions will therefore be denied.

Defendant Mrs. Clinton moved for a temporary stay of discovery pending disposition of her dispositive motion, and the government defendants thereafter joined and requested that discovery be stayed until all pending dispositive motions are resolved. Mrs. Clinton's motion will be denied as moot. The government defendants' motion is denied in light of the plaintiffs' demonstrated need for discovery.

### X. Conclusion

A report from the Senate Committee on Government Operations which recommended passage of the Privacy Act states:

The purpose of S. 3418 [the Privacy Act], as amended, is to promote governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees to observe certain constitutional rules in the computerization, collection, management, use, and disclosure of personal information about individuals....

It is designed to prevent the kind of illegal, unwise, overbroad, [sic] investigation and record surveillance of law-abiding citizens produced in recent years from actions of some over-zealous investigators, and the curiosity of some government administrators, or the wrongful disclosure and use, in some cases, of personal files held by Federal agencies ...

It is designed to set in motion for long-overdue evaluation of the needs of the Federal Government to acquire and retain personal information on Americans, by requiring stricter review within agencies of criteria for collection and retention. It is also to promote observance of valued principles of fairness and individual privacy by those who develop, operate, and administer other major institutional and organizational data banks of government and society.

S.Rep. No. 1183, 93d Cong., 2d Sesss. 1–2, reprinted in 1974 U.S.Code Cong. & Ad. News 6916, 6917, and Legislative History of the Privacy Act of 1974, at 154–155 (1976).

Plaintiffs have alleged that their personal FBI files, which were created for a legitimate but narrow purpose, were inadequately maintained and improperly disclosed to White House employees who were not acting in the interest of the United States, but for partisan political purpose. As the comments by the Senate Committee demonstrate, the Privacy Act was passed by Congress to prevent exactly this kind of behavior if that is what occurred.

A separate order will issue today.