## ORDER

M. Dennis SCULIMBRENE, Plaintiff,

v.

Janet RENO, et al., Defendants.

No. CIV.A.99–2010(CKK).

United States District Court,
District of Columbia.

Feb. 16, 2001.

native, for Summary Judgment and Plaintiff's Cross–Motion for Partial Summary Judgment. The facts and circumstances of this case arise out of Plaintiff Dennis Sculimbrene's employment with the Federal Bureau of Investigation ("FBI") and his work at the FBI's White House Liaison Office. Plaintiff alleges that Defendant FBI violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and that Defendant Executive Office of the President ("EOP") violated the Privacy Act, 5 U.S.C. § 552a. Plaintiff also alleges that Defendants Jack Quinn, Howard Shapiro, Lanny Davis, and unnamed Defendants John and Jane Does Nos. 1–5 violated the Ku Klux Klan Act, 42 U.S.C. §§ 1985(1) and 1985(2), and in addition, that these same Defendants, with the exclusion of Mr. Davis, violated Plaintiff's rights under the First and Fifth Amendments of the United States Constitution. The only claim addressed in this Opinion is Plaintiff's Privacy Act claim.

Paul J. Orfanedes, Klayman & Associates, PC, Larry E. Klayman, Judicial Watch, Inc., Washington, DC, for Plaintiff.

Anne L. Weissman, John Russell Tyler, U.S. Dept. of Justice, Timothy B. Mills, Patton Boggs, L.L.P., Washington, DC, Thomas P. Ryan, McCarthy, Wilson & Ethridge, Rockville, MD, for Defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This case comes before the Court on Defendant Executive Office of the President's Motion to Dismiss or, in the Alter-

## I. BACKGROUND

Because this Opinion addresses a single legal issue relevant only to Plaintiff's Privacy Act claim, an abbreviated statement of the facts provides sufficient background for the following discussion.[1] Plaintiff Sculimbrene is a former employee of the FBI who, during his employment, was on detail to the White House Liaison Office at the time the Clinton Administration assumed control of the White House in early 1993. Agent Sculimbrene's detail duties required him to conduct background interviews of White House executives and staff, as well as other detailees, volunteers, and contractors requiring access to the White House. *See* Complaint ¶ 13.

---

1. A more detailed statement of facts is available in *Sculimbrene v. Reno*, 158 F.Supp.2d 8 (D.D.C.2001) (Memorandum Opinion and Order granting Lanny J. Davis' Motion for Summary Judgment), and *Sculimbrene v. Reno*, 158 F.Supp.2d 1 (D.D.C.2001) (Memorandum Opinion and Order granting Jack Quinn and Howard Shapiro's Motion to Dismiss).

On March 5, 1995, Agent Sculimbrene submitted a written request to the White House Office seeking access, under the Privacy Act, to records pertaining to himself. *See id.* ¶ 26; EOP Statement of Material Facts Not in Dispute ("EOP Stmnt.") ¶ 1. The White House Office denied his request, asserting that the Privacy Act did not provide a statutory right of access to the records Agent Sculimbrene had requested, if such records exist. *See* Complaint ¶ 27; EOP Stmnt. ¶ 1. Without pointing to any specific document or record, Plaintiff contends that the White House, for purposes of "injuring and/or retaliating against [him]," has improperly maintained "confidential records on individuals, including Plaintiff, as part of a system of records." *See* Complaint, Count II. In response, the EOP, on behalf of the White House Office, insists that the White House Office is not subject to the Privacy Act. Accordingly, Defendant EOP filed a motion to dismiss or, in the alternative, for summary judgment, on the grounds that the Privacy Act does not apply to the President's personal advisors and thus, does not apply to the White House Office. Plaintiff has filed a cross-motion for partial summary judgment on the issue of the application of the Privacy Act to the White House Office.

## II. LEGAL STANDARD

This Court will not grant a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, at this nascent stage in the litigation, the Court assumes the veracity of all factual allegations forwarded by the Complaint. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Moreover,

"[t]he complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979). Nonetheless, the Court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC,* 132 F.3d 753, 762 (D.C.Cir.1997).

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir. 1994). Although a court should draw all reasonable inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party's pleadings must evince the existence of a genuine issue of material fact. *See id.* at 247–48, 106 S.Ct. 2505. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party. *See id; Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir.1987). Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. Rather, the nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial; not simply "show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. DISCUSSION

The Privacy Act, 5 U.S.C. § 552a, *et seq.*, governs federal agencies' acquisition, maintenance, use, and disclosure of information concerning individuals. When applicable, the Act provides that agencies may maintain "only such information about an individual that is relevant and necessary to accomplish a purpose of the agency as required by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). The Act further requires agencies maintaining such information to "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity .…" *Id.* § 552a(e)(10). In addition, the Act prohibits agencies, subject to certain exceptions, from disclosing information about an individual in its records without the individual's consent. *See id.* § 552a(b).

Upon receipt of a proper request from an individual, any federal agency subject to the Privacy Act must permit that individual to have access to, and the opportunity to correct and amend, its records regarding that individual. *See id.* at § 552a(d). The Privacy Act grants jurisdiction to federal courts for civil actions to compel compliance with its terms and, in the case of intentional or willful violations, to award damages. *See id.* at § 552a(g).

The sole issue presently raised for this Court's determination is whether the White House Office, a unit within the EOP, may be considered an "agency" which is subject to the terms of the Privacy Act. *See* EOP Mem. in Support of Mot. to Dismiss and for Summ. J. ("EOP Mem.") at 1. The Privacy Act provides that the term "agency" means "agency" as defined by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(f). *See* 5 U.S.C. § 552a(1); *Dong v. Smithsonian Inst.*, 125 F.3d 877, 878 (D.C.Cir.1997) (holding that the Privacy Act "borrows the definition of 'agency' found in FOIA"). FOIA defines "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f).

Although the plain language of the statute expressly includes the "Executive Office of the President," FOIA's legislative history specifies that the term "Executive Office of the President" is "not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." S. CONF. REP. No. 93–1200, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6923; H.R. CONF. REP. NO. 93–1380, at 14 (1974) (same). Recognizing congressional intent, the Supreme Court has held that the FOIA definition of "agency" does not include the "Office of the President," also known as the White House Office. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). The *Kissinger* Court based this finding, in part, on the Conference Report for the 1974 FOIA Amendments which indicates that the term "agen-

cy" shall not apply to "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *See id.* (citing H.R. Conf. Rep. No. 93–1380, at 15 (1974)). Accordingly, the Court held that such staff and units "are not included within the term 'agency' under the FOIA." *Id.*

Following the Supreme Court's opinion in *Kissinger,* the Court of Appeals for the D.C. Circuit recognized that "it has never been thought that the whole Executive Office of the President could be considered a discrete agency under FOIA." *United States v. Espy,* 145 F.3d 1369, 1373 (D.C.Cir.1998). By the same rationale, the Court of Appeals noted that an entity within the Executive Office of the President does not qualify as an "agency" unless it exercises "substantially independent authority." *Id.* Accordingly, the court noted that the Chief of Staff or the President's Counsel would not constitute an "agency" for FOIA purposes. *Id.: see also Nat'l Sec. Archive v. Archivist of the United States,* 909 F.2d 541, 545 (D.C.Cir.1990) ("The Supreme Court has made clear that the [White House Office] is not an 'agency' for purposes of the FOIA.").

Given the treatment of the White House Office under FOIA, there is a question as to whether the White House Office should receive the same treatment under the Privacy Act. Both Plaintiff Sculimbrene and Defendant EOP argue that the Privacy Act is in some way "clear" on its face with regard to this issue. That is, the government argues that the statute clearly adopts the FOIA definition of "agency" and construes that statement as an adoption of the FOIA definition precisely as it has been applied and interpreted in FOIA actions. *See* EOP Mem. at 15–16. In support of this argument, the government points to binding precedent which interprets FOIA to exclude the White House Office from the definition of "agency." *See id; Kissinger,* 445 U.S. at 156, 100 S.Ct. 960. In contrast, Plaintiff argues that the plain text of the definition of "agency" as it appears in FOIA, includes the entire EOP. *See* Pl. Opp to EOP Mot. at 13–15. In support of this argument, Plaintiff points to the legislative history of FOIA and the Privacy Act, and contends that this history reveals an intent to subject as many federal agencies as possible to the Acts.[2] *See id.* In addition. Plaintiff contrasts the intended effect of FOIA against the intended effect of the Privacy Act. *See id.*

There are two cases from this district which provide direct guidance on this issue, but neither case binds this Court, and more significantly, the two cases reach opposite conclusions. In *Alexander v. FBI,* 971 F.Supp. 603 (D.D.C.1997), Judge Royce Lamberth determined that the Office of Personal Security ("OPS") and the Office of Records Management ("ORM"), subsets of the EOP, are *not* exempt from the Privacy Act. *Id.* at 606–07. Judge Lamberth reached this conclusion based on the rationale that "the concerns of

---

**2.** Plaintiff has filed a motion for leave to supplement his opposition and cross-motion for partial summary judgment. In this motion, Plaintiff offers "recently discovered evidence from the legislative history of the Privacy Act." Pl. Mot. for Leave to File Supp. at 1. Defendant EOP responds to the substance of Plaintiff's motion with the argument that the "new evidence" is not particularly relevant or helpful to the issue before this Court. Plaintiff offers no reason for his tardy submission of evidence which appears to have been available at the time Plaintiff filed his opposition to Defendant EOP's motion for summary judgment. In addition, the legislative history submitted by Plaintiff is limited in its usefulness. *See* discussion in text *infra.* However, in light of the dearth of precedent and guidance available on the issue before the Court, Plaintiff's motion to supplement shall be granted.

FOIA and the Privacy Act are quite different." and as a result, the justification which excludes the OPS and ORM from FOIA, despite their seeming inclusion under the plain language of the statute, does not apply equally to the Privacy Act. *Id.* at 607. Judge Lamberth explained:

> When passing FOIA, Congress was addressing the need for individuals to have access to government information. When passing the Privacy Act, Congress was addressing the need for individuals to have protection for their privacy concerns. In interpreting the word "agency" to exclude, under FOIA, the immediate staff of the President, the courts recognize, as Congress did, that the access provided by FOIA must be limited. However, no court has found, and there is no evidence that the privacy protections provided by Congress in the Privacy Act must also be necessarily limited. Through the several exceptions to the restrictions on information covered by the Privacy Act, the President and those who work for the President will always have access necessary for the many executive decisions. Thus there is no need to ignore the plain language of the statute and limit the word "agency" as has been done under FOIA.

*Id.* at 606–07. Following the district court's decision in *Alexander*, the EOP, on behalf of the OPS, filed an Emergency Petition for Writ of Mandamus with the Court of Appeals for the D.C. Circuit. *See In re Executive Office of the President,* 215 F.3d 20 (D.C.Cir.2000). The Court of Appeals declined to issue the writ, stating that "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish 'the law of the district'

.... The District Court's view on this matter will be subject to review on appeal following final judgment in this case." *Id.* at 24–25 (internal citations omitted). Because the Court of Appeals declined to rule on the issue at that point, the decision in *Alexander* does not provide binding precedent as to whether the OPS and ORM, as units within the EOP, are subject to the Privacy Act.

In contrast, in *Barr v. Executive Office of the President,* No. 99–1695, (D.D.C. August 9, 2000), an unpublished memorandum opinion.[3] Judge June L. Green considered the reasoning employed in *Alexander* and rejected it, holding instead that to subject the White House Office to the terms of the Privacy Act "raises constitutional concerns, including separation of powers and Article II confidentiality." *Barr v. Executive Office of the President,* No. 99–1695, slip op. at 5. Applying the rules of construction that require a statute to "first be construed to avoid doubts of constitutionality" and further noting that "Congress, in enacting legislation restricting presidential action, must make its intent clear." Judge J.L. Green determined that by borrowing from FOIA's definition, Congress has not clearly extended the terms of the Privacy Act to the White House Office. *Id.* at 5–6 (citing *Feltner v. Columbia Pictures Television,* 523 U.S. 340, 345, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) and *Armstrong v. Bush,* 924 F.2d 282, 289 (D.C.Cir.1991) respectively). Thus, the *Barr* court concluded that "[a]s the Privacy Act borrows the FOIA definition, it fairly borrows the exceptions thereto as provided in legislative history and by judicial interpretation," and excluded the White House Of-

---

**3.** The Court is aware that, as an unpublished opinion, the opinion in *Barr* carries no precedential weight. *See* D.C.Cir. Rule 28(c). However, given the paucity of precedent available on the issue currently before the Court, the Court finds the reasoning in *Barr* to be particularly instructive.

fice from the terms of the Privacy Act. *Id.* at 6.

A third case from another district court has also been cited for guidance on this matter, *Falwell v. Executive Office of the President,* 113 F.Supp.2d 967 (W.D.Va. 2000), which agreed with Judge J.L. Green's conclusion in *Barr.* The *Falwell* court rejected the analysis in *Alexander* and rested its determination on the simple fact that "the Privacy Act expressly adopts the definition of agency as set forth in FOIA" and as a result "FOIA's definition and its judicial interpretation control the outcome in this case." *Id.* at 969. The *Falwell* court also relied upon a decision from the Court of Appeals for the D.C. Circuit, issued after Judge Lamberth's decision in *Alexander.* In *Dong v. Smithsonian Institution,* the Court of Appeals held that the Smithsonian Institution is not an agency subject to the Privacy Act, based on the Smithsonian's treatment under FOIA. 125 F.3d at 878–79. However, the *Falwell* court neglected to point out that the *Dong* court's determination to exclude the Smithsonian from the Privacy Act ultimately rested upon the plain language of FOIA, while the EOP's argument for exclusion from the Privacy Act looks beyond the plain language of FOIA and relies instead upon the legislative history and judicial interpretations of Section 552(f) of FOIA. *See Dong,* 125 F.3d at 879; *Falwell,* 113 F.Supp.2d at 969.

The *Falwell* court also relied on another D.C. Circuit case, which was cited, but distinguished by the *Alexander* court. The *Falwell* court cited *Rushforth v. Council of Economic Advisers,* 762 F.2d 1038 (D.C.Cir.1985) as persuasive authority that FOIA definitions, when incorporated into other statutes, apply exactly as they do under FOIA, inclusive of judicial interpretations. *See Falwell,* 113 F.Supp.2d at 969. Applying the FOIA definition of

"agency" to the Sunshine Act, the *Rushforth* court held that "inasmuch as the Council of Economic Advisors is not an agency for FOIA purposes, it follows of necessity that the CEA is, under the terms of the Sunshine Act, not subject to that statute either ... [because] the Sunshine Act expressly incorporates the FOIA definition of agency." 762 F.2d at 1043. The language in *Rushforth* gives the impression that the D.C. Circuit applied the FOIA definition of "agency" to the Sunshine Act exactly as the definition applies in FOIA. If the same were done in the instant case, the White House Office would not be subject to the terms of the Privacy Act. However, the *Alexander* court specifically rejected the rationale in *Rushforth* as grounds for excluding the OPS, a component of the EOP, from the terms of the Privacy Act. *See Alexander,* 971 F.Supp. at 607. In *Alexander,* Judge Lamberth rejected the guidance of *Rushforth* based on the "court's conclusion that the different purposes of FOIA and the Privacy Act do not mandate the same interpretation," because "[u]nlike the Privacy Act, the Sunshine Act serves the same purposes as FOIA." *Id.*

To further its interpretation of the Privacy Act, the EOP argues, as it did in *Barr,* that the application of the Privacy Act to the President raises "substantial separation of powers concerns." EOP Reply at 9. The EOP recites the cannon of statutory interpretation which requires that a statute be construed "if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon the score," *Feltner v. Columbia Pictures Television,* 523 U.S. 340, 345, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), and argues that to include the White House Office under the terms of the Privacy Act might be an unconstitutional interpretation. *See* EOP Mem. at 17–18. The EOP argues that application of the Privacy Act

to the White House Office threatens, among other things, to "dictate to the President" exactly when and why he may collect personal information, mandate disclosure of this information and its intended use, limit the circumstances under which he may share the information, and require the President to allow access to his records by those persons to whom they pertain. *Id.* (citing 5 U.S.C. § 552a(e)(1); § 552a(e)(3), (4), (11); § 552a(e); § 552a(b); § 552a(c); and § 552a(d)).

The EOP supports its argument by citing cases from the Supreme Court and the D.C. Circuit which, in essence, recognize the importance of confidentiality and secrecy in relation to some of the President's constitutional duties. *See id.* at 18–19 (citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (holding that the "Presidential privilege" is not absolute and that, in some cases, it must yield to the needs of the judicial process); *Ass'n of Am. Physicians and Surgeons v. Clinton,* 997 F.2d 898, 909 (D.C.Cir.1993) ("Th[e] Article II right to confidential communications attaches not only to direct communications with the President, but also to discussions between his senior advisors. Certainly, Department Secretaries and White House aides must be able to hold confidential meetings to discuss advice they secretly will render to the President.")). Rather than encourage the Court to directly address the potential constitutional issue in this case, the EOP urges the Court to exclude the White House Office from the terms of the Privacy Act on the basis that the Court must "construe the statute to avoid [serious constitutional] problems unless such construction is plainly contrary to the intent of Congress." *Pub. Citizen v. Dep't of Justice,* 491 U.S. 440, 466, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (internal quotations omitted).

Plaintiff responds that the EOP's constitutionality arguments are "throw away" arguments and insists that the Privacy Act is not a great burden upon the President nor his advisors' ability to maintain confidentiality. *See* Pl. Opp. to EOP Mot. at 20. Plaintiff further argues that application of the Privacy Act to the White House Office will not thwart "Presidential confidentiality," as such confidentiality "was not meant to protect the President in misusing government files against U.S. citizens." *Id.* The Court finds Plaintiff's arguments in this regard largely unresponsive, given that his unsupported accusation of misuse, impassioned though it may be, has little to do with whether, as a matter of legislative interpretation, the White House Office should be subject to the terms of the Privacy Act. Moreover, there does appear to be some merit to the EOP's argument. Exclusion of the White House Office is a fair construction of the terms of the Privacy Act, and that exclusion properly avoids constitutional questions. Accordingly, these prudential considerations must figure into the Court's analysis.

In support of his own cross motion for summary judgment and in opposition to the EOP's motion. Plaintiff alleges that the EOP, through its employees, has "admitted ... that the Privacy Act applies to persons and offices that advise and assist the President." *See* Pl. Opp. to EOP Mot. at 16. As grounds for this allegation, Plaintiff points to a statement by former Associate White House Counsel William H. Kennedy, III, in a deposition in connection with the *Alexander* case wherein Mr. Kennedy stated that "[t]o the extent that the Privacy Act applied to what I was doing, then I had to comply with it." *Id.* at 16. Mr. Kennedy further testified that there were "general prohibitions against [taking documents out of government files and sending them to the media]," but that these prohibitions were not exclusively, if

at all, derived from the Privacy Act. *Id.* at 17. Plaintiff points to other deposition testimony from the *Alexander* case which involves statements by other employees of the EOP to the effect that the ORM considered and attempted to "comply" with the Privacy Act. *See id.* In addition,[4] Plaintiff highlights statements by former White House Press Secretary Mike McCurry to the effect that confidential private information from a background file would be protected by the Privacy Act "if it were in our hands." *Id.* at 18. Plaintiff argues that Mr. McCurry's reference to "our hands" is to "White House hands." *Id.*

As an initial matter, many of the comments highlighted by Plaintiff in his Opposition are taken out of context and are not the clear "admissions" Plaintiff makes them out to be. *See* EOP Reply at 12 n. 2. Furthermore, in making these arguments, Plaintiff fails to point to any statutory or judicial authority which instructs a court to consider party admissions in conjunction with its interpretation of a statute. While this Court is well aware that "[w]hen faced with a problem of statutory construction, [the D.C. Circuit] shows great deference to the interpretation given the statute by the officers or agency charged with its administration," *Soucie v. David,* 448 F.2d 1067, 1075 n. 29 (D.C.Cir.1971), the comments relied upon by Plaintiff as "admissions" do not appear to fall within the scope of agency interpretation. To the contrary, the EOP points out that its view that the Privacy Act does not apply to units within the Executive Office, like the White House Office, whose sole function has been to advise and assist the President, is concor-

dant with the view of every presidential administration since the Privacy Act's enactment. *See* EOP reply at 13. Thus, even if these various statements are construed as "admissions," they do not appear to constitute agency interpretations for the purpose of interpretational deference. As a result, the statements are largely irrelevant to the Court's present task of statutory construction, which is a matter of law, not fact.

Plaintiff also directs the Court, in his Supplemental Opposition, to congressional debate and committee reports related to the enactment of the Privacy Act. *See generally* Supplemental Opp. In general terms, this additional material is offered to show the reasons for enacting the Privacy Act, in the hope that these reasons will provide some guidance to the Court's interpretation of the definition of "agency" provided in Section 552a. Plaintiff argues that this legislative material supports his interpretation of the term "agency" to include the White House Office because the Privacy Act, according to Plaintiff, "was enacted in response to the abuses of President Nixon and his closest advisors." *Id.* at 2. Thus, in Plaintiff's view, the connection between the Watergate scandal and the enactment of the Privacy Act indicates an intent to subject all portions of the Executive Branch to the Privacy Act's terms. However, in contrast with Plaintiff's argument in this regard, portions of the legislative history indicate that "[a]lthough many witnesses have said that the disclosures of Watergate highlighted the need for this bill, the committee report makes clear that the bill is based on long-

---

4. Plaintiff also alleges that the EOP made an additional admission with regard to the application of the Privacy Act. *See* Pl. Opp to EOP Mot. at 19. However, upon examination, it is clear that the relevant statement cannot be treated as an "admission," as alleged. To the

contrary, it appears that the EOP, having been constrained by the *Alexander* court's prior ruling against it, is attempting to apply the law of the case to the facts at issue. *See* Pl.Ex. 10 at 4.

standing complaints of governmental threats to privacy which will haunt Americans in the years ahead .... " Supplemental Opp.. Ex. 1 at 8; 120 CONG. REC. S36891 (November 21, 1974) (statement of Senator Ervin). The contrast between Senator Ervin's comments and Plaintiff's summary of the legislative history illustrates that the expansive scope of the legislative history relied upon by Plaintiff includes conflicting information which is not readily reconcilable and, as a result, is often limited in its usefulness. This conclusion is understandable and is not unexpected given that this supplemental material consists of debate and discussion on the floor and in committees of both houses, where a number of considerations may be expressed, although these considerations may or may not ultimately be incorporated into a final conference committee report and/or the final version of a statute. More significantly, the comments in these materials provide little guidance on the specific interpretative issue currently before the Court because they merely reiterate the term "agency" without more detailed elaboration as to its meaning. Notably too, the legislative history for FOIA also includes references to the Watergate abuses. *See* EOP Resp. to Pl. Supplemental Opp. at 5 (citing and quoting legislative history of FOIA). These facts significantly undercut Plaintiff's argument that the Watergate references in the Privacy Act's legislative history provide a basis for distinguishing between the uses of the term "agency" in the two Acts.

In light of all of the above considerations, the Court concludes that the terms of the Privacy Act do not apply to the Office of the White House. The Court bases this conclusion, in large part, on the fact that Congress, neither in the text of the Privacy Act, nor in its legislative history, indicates an intention to interpret the term "agency" in any manner other than

as it is used in FOIA. By its own terms, the Privacy Act provides that "the term 'agency' means agency as defined in section 552(e) of this title." 5 U.S.C. § 552a. Section 552(e) of Title 5 is a provision in FOIA. *See* 5 U.S.C. § 552(e). There is every indication from the legislative history that the drafters of the Privacy Act, in choosing to apply the FOIA definition of "agency" to the Privacy Act, were cognizant of the Conference Committee Report prepared in connection with the 1974 FOIA Amendments, which specifically provided that "the term [agency] is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *See* H.R. CONF. REP. 93–1380 at 15. For example, "the Subcommittee of Government Operations, known as Foreign Operations and Government Information, is the parent subcommittee of both bills, the Freedom of Information Act and now this new Privacy Act." *See* 120 CONG. REC. H36645 (November 20, 1974) (statement of Rep. Erlenborn). The comments of Congressman Erlenborn, a House Manager on the Joint Committee of Conference on the 1974 FOIA Amendments, further indicate that the Subcommittee was aware of the competing concerns of FOIA and the Privacy Act. *See id.* ("It has been quite an effort to walk a tightrope in the one bill to provide the maximum access to information on the part of the public, and in the other bill to limit access to protect an individual's privacy."); H.R. CONF. REP. No. 93–1380 at 5 (1974). Yet, despite these competing concerns, Congress chose to define "agency" in the Privacy Act according to the terms used in FOIA and provided no indication that it expected the provisions to be interpreted differently.

The Supreme Court has stated clearly that, "where, as here, Congress adopts a

new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Such a rule seems particularly appropriate where, as in this case, congressional consideration of the Privacy Act followed closely on the heels of congressional consideration of the 1974 FOIA Amendments, wherein Congress displayed an understanding of the judicial interpretation applied to the term "agency" and indicated further its intent to prevent the term from applying to the personal advisors to the President. *See* 120 Cong. Rec. H36645 ("I think it is rather fitting that [the Privacy Act] comes to the floor on the same day that we considered a motion to override and have overridden the President's veto on the Freedom of Information Act."); H.R. Conf. Rep. No. 93–1380 at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6923 ("With respect to the term 'Executive Office of the President' [in FOIA] the conferees intend the result reached in *Soucie v. David,* 448 F.2d 1067 (C.A.D.C.1971). The term is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President."); S. Conf. Rep. No. 93–1200, at 15 (1974) (same).

Given these considerations, there seems little reason for this Court, while interpreting legislative terminology and congressional intent, to formulate its own policy analysis and concerns when no such similar concerns were expressed by Congress itself. Said otherwise, absent express congressional guidance, the mere fact that the Privacy Act and FOIA may reflect competing concerns for privacy and public access cannot control the Court's interpretation of the term "agency" as it is used in the

Privacy Act. The term "agency," as it is defined in 5 U.S.C. § 552(f), has been interpreted clearly to exclude the White House Office. *See Kissinger,* 445 U.S. at 156, 100 S.Ct. 960; *Nat'l Sec. Archive,* 909 F.2d at 545. The Privacy Act expressly adopts the definition of "agency" provided in Section 552(f). *See* 5 U.S.C. § 552a. Accordingly, the term "agency," as defined in Section 552a of the Privacy Act, does not apply to the White House Office. Based on this conclusion, the EOP is entitled to dismissal of Plaintiff's Privacy Act claims against it.

## IV. CONCLUSION

Having considered the relevant motions, oppositions, and replies, as well as any supplemental material, based on the foregoing analysis, the Court concludes that Defendant EOP's motion to dismiss shall be granted on the grounds that the White House Office is not subject to the terms of the Privacy Act. An appropriate Order accompanies this Memorandum Opinion.

## ORDER

This case comes before the Court on a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendant Executive Office of the President (EOP). Having considered Defendant EOP' motion, Plaintiff's Opposition thereto, Defendant's Reply, and any supplemental materials, for the reasons set forth in the accompanying Memorandum Opinion, it is, this 16 day of February, 2001, hereby

**ORDERED** that Plaintiff's Motion to Supplement his Opposition (# 82) is GRANTED; and it is further

**ORDERED** that Defendant EOP's Motion to Dismiss (# 66) is GRANTED; and it is further

**ORDERED** that Plaintiff's Cross–Motion for Partial Summary Judgment (# 71) is DENIED.

**SO ORDERED.**